| | |
|---|---|
| DIANE PITRE, ET AL. | CIVIL ACTION |
| VERSUS | NO. 17-7029 |
| HUNTINGTON INGALLS, INC., ET AL. | SECTION "R" (5) |

## ORDER AND REASONS

Before the Court is plaintiffs' motion to remand to state court,[1] and Defendants Huntington Ingalls, Inc. and Lamorak Insurance Company's motion for review of the Magistrate Judge's order granting plaintiffs leave to amend their complaint.[2] For the following reasons, the Court denies both motions.

## I.    BACKGROUND

This case arises out of alleged asbestos exposure at Avondale Shipyard in Avondale, Louisiana.[3] Stewart Pitre worked as a pipefitter for Avondale Shipyard from 1963 to 1972.[4] Mr. Pitre developed lung cancer, allegedly as

---

[1]    R. Doc. 20.
[2]    R. Doc. 43.
[3]    R. Doc. 4-1 at 4.
[4]    *Id.*

a result of exposure to asbestos at Avondale Shipyard, and passed away on July 15, 2016.[5]

On April 6, 2017, Mr. Pitre's wife and children filed an action in state court for wrongful death and survival.[6] Plaintiffs named numerous defendants, including Huntington Ingalls, Inc. (Avondale) and Foster Wheeler, LLC.[7] Plaintiffs' original petition included, among other causes of action, failure to warn and other negligence claims against Avondale, and strict products liability and failure to warn claims against Foster Wheeler.[8] Foster Wheeler allegedly produced boilers with asbestos-containing insulation that Mr. Pitre came into contact with aboard vessels at Avondale.[9] On June 30, 2017, plaintiffs filed a first amended petition adding Occidental Chemical Corporation as a defendant, and asserting strict liability claims against both Avondale and Occidental Chemical.[10]

On June 27, 2017, Chester Rodrigue, a former coworker of Mr. Pitre's, testified in a deposition that he worked with Mr. Pitre on Destroyer Escorts

---

[5]     *Id.* at 4 ¶ 15.
[6]     *Id.* at 1.
[7]     *Id.* at 1-2.  Huntington Ingalls was formerly known as Avondale Industries, Inc., and Avondale Shipyards, Inc.  *See id.* at 1.
[8]     *Id.* at 9-11.
[9]     *Id.* at 2, 9.
[10]    R. Doc. 1-2 at 1-2, 6; R. Doc. 19-1 at 3-4.  Avondale and Occidental Chemical are each identified in the petition as "Premises Defendants."  *See* R. Doc. 1-2 at 1-2.

built by Avondale.[11]   Avondale and its alleged insurer, Lamorak Insurance Company, removed this case to federal court on July 24, 2017.[12]   Avondale and Lamorak argue that they are entitled to remove this matter under 28 U.S.C. § 1442(a)(1) because plaintiffs' claims are for or related to acts performed under color of federal office while Avondale was acting under the authority of an officer of the United States.[13]   The notice of removal asserts that removal is timely because it came within 30 days of Mr. Rodrigue's testimony, which provided the first notice that Mr. Pitre's alleged injuries were connected to asbestos-containing materials on Destroyer Escorts built by Avondale for the U. S. Navy.[14]   *See* 28 U.S.C. § 1446(b)(3).

On August 23, 2017, plaintiffs requested leave to file an amended complaint to delete their strict liability claims against Avondale.[15] Magistrate Judge North granted plaintiffs leave to amend.[16]   Avondale and Lamorak

---

[11]   R. Doc. 23-1 at 1, 6-8, 10.
[12]   R. Doc. 1.  Lamorak is also the alleged insurer of deceased Avondale executive officers C.E. Hartzman, Henry Zac Carter, and Hettie Dawes Eaves.  *See id.* at 1; R. Doc. 4-1 at 3 ¶¶ 10-11.
[13]   R. Doc. 1 at 4-5.
[14]   *Id.* at 3.
[15]   R. Doc. 19.
[16]   R. Doc. 31.

Insurance now appeal Judge North's decision.[17]   Plaintiffs oppose

defendants' appeal, and move to remand this action to state court.[18]

## II.   LEGAL STANDARD

The federal officer removal statute permits an officer of the United

States, "or any person acting under that officer," to remove to federal court a

civil action or criminal prosecution brought against them "in an official or

individual capacity, for or relating to any act under color of such office . . . ."

28 U.S.C. § 1442(a)(1).  The party asserting jurisdiction under this statute

bears the burden of establishing that federal jurisdiction exists.  *Winters v.

Diamond Shamrock Chem. Co.*, 149 F.3d 387, 397 (5th Cir. 1998).

The purpose of the federal officer removal provision is to protect the

lawful activities of the federal government from undue state interference.

*See Willingham v. Morgan*, 395 U.S. 402, 405-06 (1969).  Because the

federal government "can act only through its officers and agents," it has a

strong interest in ensuring that the states do not hinder those officers in the

execution of their duties.  *Id.* at 406-07 (quoting *Tennessee v. Davis*, 100

U.S. 257, 263 (1880)).  The federal officer removal statute "authorizes

---

[17]     R. Doc. 43.
[18]     R. Doc. 20; R. Doc. 46.

removal of the entire case even though only one of its controversies might involve a federal officer or agency." *IMFC Prof. Servs. of Fla. v. Latin Am. Home Health, Inc.*, 676 F.2d 152, 158 (5th Cir. Unit B 1982).

Because of its broad language and unique purpose, the federal officer removal statute has been interpreted to operate somewhat differently from the general removal provision. Unlike the general removal statute, which must be "strictly construed in favor of remand," *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002), the federal officer removal provision must be liberally construed. *Watson v. Philip Morris Co., Inc.*, 551 U.S. 142, 147 (2007). A case against a federal officer may be removed even if a federal question arises as a defense rather than as a claim apparent from the face of the plaintiff's well-pleaded complaint. *See Jefferson County, Ala. v. Acker*, 527 U.S. 423, 431 (1999). Additionally, removal under § 1442(a)(1) does not require the consent of codefendants. *See Humphries v. Elliott Co.*, 760 F.3d 414, 417 (5th Cir. 2014).

## III. DISCUSSION

### A. Appeal of Magistrate Judge's Order

Magistrate Judge North granted plaintiffs leave to amend their complaint to remove strict liability claims against Avondale.[19] Avondale and Lamorak Insurance appeal this decision, arguing that plaintiffs' amendment is improper.[20] Magistrate judges are empowered to "hear and determine" certain non-dispositive pretrial motions, including a motion for leave to amend. 28 U.S.C. § 636(b)(1)(A); *see also PYCA Indus., Inc. v. Harrison Co. Waste Water Mgmt. Dist.*, 81 F.3d 1412, 1421 n.11 (5th Cir. 1996). If a party is dissatisfied with a magistrate judge's ruling, it may appeal to the district court. Fed. R. Civ. P. 72(a). When a timely objection is raised, the district court will "modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.*; *see also* 28 U.S.C. § 636(b)(1)(A). The Court reviews the magistrate judge's "factual findings under a clearly erroneous standard, while legal conclusions are reviewed *de novo.*" *Moore v. Ford Motor Co.*, 755 F.3d 802, 806 (5th Cir. 2014) (internal citation omitted). A factual "finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite

---

[19] R. Doc. 31; *see also* R. Doc. 19.
[20] R. Doc. 43.

6

and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

The order granting plaintiffs leave to amend their complaint is not clearly erroneous or contrary to law. Courts will "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). The Court considers multiple factors in determining whether it is appropriate to grant leave, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Avondale and Lamorak Insurance appear to argue that plaintiffs' amendment is in bad faith because it is intended to defeat federal jurisdiction, and that the amendment is futile because it cannot destroy federal jurisdiction.[21] Plaintiffs represent that the addition of strict liability claims against Avondale in the first amended petition was an inadvertent error.[22] Plaintiffs explain that they requested leave to amend in state court to add a new defendant, Occidental Chemical Corporation, and never requested leave to add new claims against Avondale.[23] But plaintiffs

---

[21] R. Doc. 43-1 at 5-7.
[22] R. Doc. 19-1 at 5.
[23] *Id.* at 3-4.

7

acknowledge that their second amended complaint is intended to support their motion to remand.[24]

The magistrate judge could reasonably have concluded that plaintiffs' amendment seeks to correct a good faith error, and was not made in bad faith. Plaintiffs are dropping substantive claims against Avondale that they might otherwise have pursued, and are not engaging in merely superficial manipulation of the pleadings to defeat federal jurisdiction. *See Enochs v. Lampasas Co.*, 641 F.3d 155, 160 (5th Cir. 2011) (noting that a "motion to amend [the] complaint to delete the federal claims is not a particularly egregious form of forum manipulation, if it is manipulation at all"). Avondale relies on the Fifth Circuit's unpublished opinion in *Bouie v. Equistar Chemicals, L.P.*, 188 F. App'x 233 (5th Cir. 2006), to argue that plaintiffs' amendment should be disallowed.[25] But the *Bouie* court held only that the district court did not abuse its discretion in denying leave to amend after finding futility and bad faith, not that a complaint can never be amended to remove federal claims. *Id.* at 238-39.

Avondale asserts that plaintiffs' amendment is futile because it cannot destroy federal jurisdiction.[26] Federal question jurisdiction under the

---

[24] *Id.* at 5.
[25] R. Doc. 43-1 at 6.
[26] *Id.* at 6-7.

federal officer removal statute arises out of the existence of a federal defense in the notice of removal. *See Mesa v. California*, 489 U.S. 121, 136 (1989). If a case is properly removed, the Court acquires supplemental jurisdiction over nonfederal claims. *See IMFC Prof. Servs. of Fla.*, 676 F.2d at 158-59; *see also Wilde v. Huntington Ingalls, Inc.*, 616 F. App'x 710, 715 n.24 (5th Cir. 2015). Thus, the post-removal "elimination of the federal officer from a removed case does not oust the district court of jurisdiction (except where there was no personal jurisdiction over the officer)." *See IMFC Prof. Servs. of Fla.*, 676 F.2d at 159.

The Court nevertheless has discretion to relinquish supplemental jurisdiction and remand to state court if an amended complaint eliminates the federal question in a case. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 346, 357 (1988); *see also Sewell v. Sewerage & Water Bd. of New Orleans*, 697 F. App'x 288, 291, 293 (5th Cir. 2017). Magistrate Judge North thus correctly concluded that it is within the Court's discretion to consider an amended complaint within the context of a motion to remand.[27] *See Carnegie-Mellon Univ.*, 484 U.S. at 357 (explaining that the "district court can consider whether the plaintiff has attempted to manipulate the forum" when deciding whether remand is appropriate). That the amended

---

[27]     R. Doc. 31.

complaint does not automatically destroy federal jurisdiction weighs in favor, rather than against, permitting amendment. *Cf. Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987) (explaining that courts should scrutinize an amendment that would destroy federal jurisdiction more closely than an ordinary amendment).

Accordingly, the Court finds no error in Magistrate Judge North's order granting plaintiffs leave to amend their complaint. Avondale and Lamorak Insurance's appeal is denied.

### B. Motion to Remand

Plaintiffs argue that, in light of the amended complaint, the Court lacks subject matter jurisdiction and this case must be remanded to state court.[28] But, as explained above, the Court's jurisdiction is based on the notice of removal, not the amended complaint. *See IMFC Prof. Servs. of Fla.*, 676 F.2d at 159; *see also Bartel v. Alcoa S.S. Co., Inc.*, 805 F.3d 169, 172 n.2 (5th Cir. 2015). Although an amended complaint deleting federal claims may permit a discretionary remand, it does not destroy federal jurisdiction over a validly removed case. Here, the Court finds that remand is not justified. Avondale's notice of removal is valid, and the Court properly acquired jurisdiction over this matter. Further, Foster Wheeler was not affected by

---

[28]     R. Doc. 20-1.

plaintiffs' amended complaint, and remains entitled to a federal forum under the federal officer removal statute.

### 1. *Jurisdiction at Removal*

Avondale removed this case to federal court based on its work as a military contractor.[29]  The Fifth Circuit has adopted a three-part test to determine whether a government contractor may invoke 28 U.S.C. § 1442(a)(1).  The contractor must show that: (1) it is a "person" within the meaning of the statute; (2) it acted pursuant to a federal officer's directions, and a causal nexus exists between its actions under color of federal office and the plaintiffs' claims; and (3) it has a colorable federal defense to the plaintiffs' claims.  *Winters*, 149 F.3d at 398-400.

Plaintiff's first amended state court petition, which formed the basis for removal, names Avondale and Occidental Chemical Corporation as "Premises Defendants."[30]  The amended petition asserts a strict liability claim against the Premises Defendants under Louisiana Civil Code article 2317 for Mr. Pitre's injuries as a result of asbestos exposure.[31]  Avondale argues that it is a person under the statute, it was acting under an officer of the United States, the use and installation of asbestos-containing materials

---

[29]    R. Doc. 1.
[30]    R. Doc. 1-2 at 1-2.
[31]    *Id.* at 6.

was required by its contracts with the U.S. Navy, and it has colorable federal defenses to plaintiffs' claims under both *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), and the Longshore and Harbor Workers' Compensation Act.[32]

Circuit precedent strongly supports Avondale's right to remove this matter based on plaintiffs' strict liability claims for asbestos exposure. Under nearly identical factual circumstances, the Fifth Circuit held that Avondale is a person within the meaning of the statute, and that it satisfied the causal nexus requirement between its work as a military contractor and the plaintiffs' strict liability claims for asbestos exposure under Louisiana Civil Code article 2317. *See Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 462, 463-66 (5th Cir. 2016). The *Savoie* court found a sufficient causal relationship because "[t]he strict liability claims rest on the mere use of asbestos, and that use at the shipyard was pursuant to government directions via contract specifications." *Id.* at 465; *see also Winters,* 149 F.3d at 400.

The evidence before the Court indicates that the U.S. Government required the use of asbestos at Avondale for most of the time period between 1963 and 1972 when Mr. Pitre was employed there. Avondale submits the affidavits of Commander Thomas McCaffery, Edward Blanchard, and Danny

---

[32]    R. Doc. 1; R. Doc. 23.

Joyce.[33] McCaffery, a retired Commander in the U.S. Navy (Reserve), attests that the contracts between Avondale and the U.S. Government to build warships specified the materials that could be used in the construction of U.S. Navy ships.[34] He further represents that, until mid-1969, all approved pipe insulation products for use on pipes whose normal operating temperature exceeded 370 degrees Fahrenheit contained asbestos.[35]

Blanchard, a former supervisor and vice-president at Avondale, attests that all aspects of work on federal vessels at Avondale were performed under the close and detailed surveillance of the U.S. Navy and other federal agencies.[36] Further, Blanchard states that federal inspectors retained ultimate decision-making authority over all construction, and that every component installed on a Navy vessel had to be on the Navy's list of qualified products.[37] Joyce, a former industrial hygienist at Avondale, represents that he has reviewed the contracts and specifications pertaining to the construction of federal vessels at Avondale.[38] He states that federal inspectors monitored the site to ensure that the supplies used were those

---

[33] R. Doc. 23-3; R. Doc. 23-4; R. Doc. 23-5.
[34] R. Doc. 23-3 at 1, 6-7.
[35] *Id.* at 7 ¶ 27.
[36] R. Doc. 23-4 at 1-2.
[37] *Id.* at 2, 8.
[38] R. Doc. 23-5 at 1, 3.

required by the contracts and specifications, including asbestos-containing insulation and other asbestos-containing materials.[39]

As noted above, Chester Rodrigue's deposition testimony indicates that Mr. Pitre worked on Destroyer Escorts built by Avondale for the U.S. Navy.[40] The Court finds that Avondale has shown a sufficient causal nexus between Avondale's actions under color of federal office and plaintiffs' strict liability claims for use of asbestos. Because Avondale satisfies the causal nexus standard as it was applied by the Fifth Circuit in *Savoie*, 817 F.3d 457 and *Winters*, 149 F.3d 387, the Court need not address Avondale's argument that the 2011 amendments to the federal officer removal statute created a less demanding causal nexus requirement.[41]

Avondale has also presented a colorable defense of federal contractor immunity. The federal defense need only be colorable, not clearly sustainable, and a federal "officer need not win his case before he can have it removed." *See Willingham*, 395 U.S. at 406-07; *see also Acker*, 527 U.S. at 432. The Fifth Circuit has explained that "a non-colorable federal defense is a defense that is immaterial and made solely for the purpose of obtaining jurisdiction or that is wholly insubstantial and frivolous." *Zeringue v. Crane*

---

[39]    *Id.* at 3-4 ¶ 8.
[40]    R. Doc. 23-1 at 1, 6-8, 10.
[41]    R. Doc. 23 at 14-17.

*Co.*, 846 F.3d 785, 790 (5th Cir. 2017). Federal contractors are immune from suit when "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

As outlined above, Avondale has provided evidence that the U.S. Navy required it to comply with precise specifications, including the use of asbestos-containing pipe insulation.[42] Avondale's affidavits also indicate that federal monitors ensured that vessels built by Avondale conformed to contract specifications.[43] *See Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 420 (5th Cir. 2001) (explaining that evidence of inspections, and "[a]cceptance and use of an item following its production can establish that the item conformed to its specifications").

Further, the evidence suggests that the U.S. Government was at least as knowledgeable about the dangers of asbestos as Avondale. Joyce attests that Avondale did not have any information regarding the hazards of asbestos that was not known by the federal government, including the U.S.

---

[42]    R. Doc. 23-3 at 7 ¶ 27.
[43]    R. Doc. 23-4 at 2-3; R. Doc. 23-5 at 3-4 ¶ 8.

Navy.[44]    Avondale also offers the deposition testimony of Dr. Richard Lemen, a retired Assistant Surgeon General of the United States, who testified that the U.S. Public Health Service collected and reviewed scientific literature on asbestos beginning in the 1930s.[45]

The Fifth Circuit has held that a U.S. Navy contractor had a colorable federal defense against a strict liability claim for asbestos exposure when evidence existed that military specifications required the use of asbestos, and the Navy had as much or more knowledge about the dangers of asbestos exposure as the contractor.  *See Zeringue*, 846 F.3d at 791-92.  This case presents similar circumstances, and the Court finds that Avondale has stated a colorable defense of federal contractor immunity to plaintiffs' strict liability claims.  *See Savoie v. Penn. Gen. Ins. Co.*, No. 15-1220, 2017 WL 2391264, at *6-7 (E.D. La. 2017) (holding that Avondale presented a colorable defense of federal contractor immunity to strict liability claims for asbestos exposure). Because the Court finds a colorable federal contractor immunity defense under *Boyle*, it need not reach Avondale's argument that it also has a colorable federal defense under the Longshore and Harbor Workers' Compensation Act.[46]

---

[44]    R. Doc. 23-5 at 4 ¶ 9.
[45]    R. Doc. 23-7 at 7.
[46]    R. Doc. 23 at 24.

Plaintiffs do not seriously contest that their strict liability claims against Avondale are removable under 28 U.S.C. § 1442(a)(1).[47] Plaintiffs instead maintain that their strict liability allegations against Avondale were brought in error, and have since been deleted in the amended complaint.[48] As discussed above, a good faith error may justify granting leave to amend. But plaintiffs' error does not create a jurisdictional defect in the notice of removal. Accordingly, the Court finds that Avondale's notice of removal is valid and that federal jurisdiction exists over this matter.

### 2. *Claims Against Foster Wheeler*

Plaintiffs argue that, even if the Court properly acquired jurisdiction, the amended complaint has removed the federal question in this case and the Court has discretion to remand the remaining state law claims.[49] But, although plaintiffs' amended complaint deleted the strict liability claims as to Avondale, plaintiffs continue to press strict liability claims against Foster Wheeler.[50] Foster Wheeler asserts in its opposition to the motion to remand

---

[47] Plaintiffs' motion to remand assumes that the strict liability claims against Avondale have been deleted and instead argues that plaintiffs' failure to warn and other negligence claims against Avondale do not trigger federal jurisdiction under § 1442(a)(1). *See generally* R. Doc. 20-1.

[48] R. Doc. 20-1 at 2.

[49] *Id.* at 3.

[50] *See* R. Doc. 4-1 at 9-10; R. Doc. 32.

that it independently qualifies for federal officer removal and has a colorable federal defense in this case.[51]

As a threshold matter, the Court must determine whether Foster Wheeler can invoke federal jurisdiction at this stage of the litigation. Plaintiffs contend that Foster Wheeler has forfeited its right to assert federal jurisdiction under § 1442(a)(1) because it did not join in the original notice of removal or file its own timely supplemental notice of removal.[52] Plaintiffs cite multiple cases that stand for the proposition that a defective notice of removal cannot be cured by untimely attempts to assert new bases for federal jurisdiction.[53] But such cases are inapposite to the posture of this case because Avondale's notice of removal was not defective, and the Court properly acquired removal jurisdiction.

The inquiry at this time is not whether the case was properly removed, but rather whether the Court can and should relinquish jurisdiction. The Fifth Circuit has held that a district court has no discretion to remand a case over which it continues to exercise federal question jurisdiction, even if the federal officer who originally removed the matter is dismissed from the case. *See Buchner v. FDIC*, 981 F.2d 816, 818, 821 (5th Cir. 1993) ("The fact that

---

[51] R. Doc. 24.
[52] R. Doc. 28 at 1-2.
[53] *Id.* at 2-5.

the FDIC waived its right to remove the instant case is irrelevant to the determination of whether the case should have or could have been remanded once it had been properly removed by another party who had not waived the right to remove.").

When two defendants independently assert federal officer removal jurisdiction, separate notices of removal are not strictly required to protect each defendant's right to a federal forum. In *Humphries*, the Fifth Circuit held that a defendant served after removal preserves its right to invoke federal jurisdiction under § 1442(a)(1) by asserting a government contractor defense in its answer. 760 F.3d at 417. The *Humphries* court explained that removal under §1442(a)(1) does not require the consent of codefendants, and defendants in cases that have already been removed to federal court are not required "to file a meaningless 'notice of removal' or unnecessary 'joinder' in order to preserve their right to a federal forum." *Id.*

Although Foster Wheeler was served before removal, it asserted a federal contractor defense in its answer to plaintiff's state court petition,[54] and incorporated this defense into its answer to the amended petition in

---

[54]    R. Doc. 4-1 at 139, 143-44.  Foster Wheeler stated that, to the extent plaintiffs allege exposure to products manufactured by Foster Wheeler for a government contract, Foster Wheeler complied with government specifications, worked under the directions of a federal officer, and is entitled to federal contractor immunity.  *See id.* at 143-44.

federal court.[55]   Given that Avondale properly removed this matter to federal court, the Court finds that barring Foster Wheeler from invoking federal jurisdiction simply because it did not file a separate notice of removal would be an impermissibly "'narrow, grudging interpretation' of § 1442(a)(1)." *Id.* (citing *Willingham*, 395 U.S. at 407).

Having found that Foster Wheeler preserved its right to assert federal jurisdiction, the Court next considers whether Foster Wheeler meets the requirements of § 1442(a)(1).   Plaintiffs' state court petition alleges that Foster Wheeler produced, manufactured, and sold boilers with asbestos-containing insulation, and that Mr. Pitre inhaled asbestos dust from this insulation during the course of his employment at Avondale.[56]   Specifically, plaintiffs assert that Foster Wheeler's boilers were unreasonably dangerous per se, that Foster Wheeler failed to place adequate warnings on its boilers regarding the dangers of asbestos, and that Foster Wheeler is strictly liable for defective product design because it failed to design its products in such a manner as to minimize exposure to asbestos.[57]

With regard to plaintiffs' design defect claims, Foster Wheeler asserts that it produced boilers for use aboard three Navy ships built at Avondale

---

[55]     R. Doc. 17 at 2; *see also* R. Doc. 24 at 3 n.7.
[56]     R. Doc. 4-1 at 9 ¶ 33.
[57]     *Id.* at 9-10 ¶¶ 34-35.

during the period Mr. Pitre worked there, and these boilers were manufactured in compliance with detailed Navy specifications.[58] Foster Wheeler points to the deposition testimony of Chester Rodrigue, who testified that Mr. Pitre worked on "just about all" of the Navy Destroyer Escorts built at Avondale.[59]

Foster Wheeler also offers deposition testimony and affidavits from J. Thomas Schroppe and Admiral Ben Lehman.[60] Schroppe, a former Foster Wheeler executive, testified that Foster Wheeler supplied boilers to ships constructed at Avondale, including the *Edward McDonnel*, the *Brumby*, and the *Davidson*.[61] Vessel construction records indicate that these three vessels were built for the U.S. Navy at Avondale and delivered in 1965.[62] In an affidavit, Schroppe further attests that Foster Wheeler fabricated and furnished marine propulsion boilers for the U.S. Navy according to the military's detailed specifications.[63] These specifications extended to the materials required to fabricate the boiler and its components, including insulation materials.[64]

---

[58]     R. Doc. 24 at 2, 7-8.
[59]     R. Doc. 23-1 at 10.
[60]     R. Doc. 24-4; R. Doc. 24-5.
[61]     R. Doc. 24-2 at 8-9; *see also* R. Doc. 24 at 2.
[62]     R. Doc. 24-3.
[63]     R. Doc. 24-4 at 1-2.
[64]     *Id.* at 2-3

Admiral Lehman, an engineer and retired Rear Admiral in the U.S. Navy, similarly attests that boilers used on Navy combat vessels, including Foster Wheeler boilers, were designed and manufactured according to detailed specifications written, approved, and issued by the U.S. Navy.[65] Admiral Lehman further explains that naval inspectors were responsible for assuring that contractors like Foster Wheeler complied with contract specifications in every detail, and the U.S. Navy retained final say over the design of any piece of equipment.[66] In addition to these affidavits, Foster Wheeler has provided copies of relevant military specifications, including machinery and piping thermal insulation requirements from 1966 that state that asbestos materials shall be used for certain insulation.[67]

The Court finds that Foster Wheeler has presented sufficient evidence to show that it satisfies the requirements of § 1442(a)(1) as to plaintiffs' design defect claims. Plaintiffs do not dispute that Foster Wheeler is a person under the statute. *See Dupre v. Todd Shipyards Corp.*, No. 11-2097, 2011 WL 4551439, at *5 (E.D. La. 2011). Further, Foster Wheeler has shown that it acted under the U.S. Navy's directions during the period that Mr. Pitre was employed at Avondale, and that an apparent causal nexus exists between

---

[65] R. Doc. 24-5 at 1-2.
[66] *Id.* at 4-5.
[67] R. Doc. 24-7; *see also* R. Doc. 24-6; R. Doc. 25-8; R. Doc. 24-9.

its actions under color of federal office and plaintiffs' design defect claims. Foster Wheeler has offered evidence that it was required to construct its boilers in conformity with detailed Navy specifications, that its relationship with Mr. Pitre derived from its official authority to provide products to the Navy, and that this authority relates to Foster Wheeler's alleged use of asbestos in its boiler products. *See Zeringue*, 846 F.3d at 79-94; *see also Dupre,* 2011 WL 4551439, at *6.

Further, Foster Wheeler has stated a colorable defense of federal contractor immunity. Federal contractors cannot be held liable under state law for design defects in military equipment when, as outlined above, "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512. The above-described evidence supports the inference that the U.S. Navy required Foster Wheeler's boilers to conform to precise specifications. Further, Admiral Lehman attests that Navy inspectors would refuse to approve or authorize shipment of any products that failed to comply with contract specifications.[68]

---

[68]     *See, e.g.*, R. Doc. 24-5 at 4.

This suggests that the boilers likely conformed to military specifications.[69] *See Miller*, 275 F.3d at 420. Finally, as with Avondale, Foster Wheeler's evidence suggests that the U.S. Navy knew as much or more about the dangers of asbestos as Foster Wheeler. Admiral Lehman explains that the U.S. Navy conducted extensive research on the dangers of asbestos exposure beginning in the 1930s, and he attests that the Navy made a conscious decision regarding how asbestos would be used on its ships in light of its knowledge of these hazards.[70]

Plaintiffs have not contested the substance of Foster Wheeler's federal contractor defense, and the Court perceives no basis to distinguish this case from *Zeringue*, 846 F.3d 785.[71] As the *Zeringue* court explained, although Foster Wheeler has not provided "definitive proof that [the] asbestos exposure resulted from the Navy's" discretionary decision to use asbestos, definitive proof is not necessary to establish a colorable defense of federal contractor immunity. *Id.* at 792; *see also Dupre*, 2011 WL 4551439, at *7

---

[69] *See, e.g.*, R. Doc. 24-5 at 4.

[70] *Id.* at 6-7.

[71] Notably, in arguing that their failure to warn claims against Avondale are not controlled by *Zeringue*, plaintiffs emphasize that *Zeringue* involved strict liability claims against a product manufacturer premised on the mere use of asbestos. *See* R. Doc. 20-1 at 15. This argument is unavailing as to Foster Wheeler because Foster Wheeler is a product manufacturer and plaintiffs' claims against it are based on its use of asbestos-containing insulation. *See* R. Doc. 4-1 at 9-10.

(holding that Foster Wheeler asserted a colorable federal contractor immunity defense as to strict liability claims); *cf. Sawyer v. Foster Wheeler, LLC*, 860 F.3d 249, 256-57 (4th Cir. 2017) (finding that Foster Wheeler had a colorable federal defense as to failure to warn claims).

Accordingly, the Court finds that Foster Wheeler satisfies the requirements to invoke federal jurisdiction under § 1442(a)(1) based on plaintiffs' design defect claims. The Court retains federal question jurisdiction in this matter, and plaintiffs' motion to remand must therefore be denied. The Court need not and does not reach Avondale's and Foster Wheeler's arguments that it also has federal question jurisdiction over plaintiffs' failure to warn and other negligence claims.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES the motion to review the Magistrate Judge's order granting plaintiffs leave to amend. Further, the Court DENIES plaintiffs' motion to remand.

New Orleans, Louisiana, this ___6th___ day of December, 2017.

*Sarah Vance*
_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE